Take your time setting up. Our next case is number 24-13463 Grange Insurance Company v. Mark Martin et al. Mr. Palmer. Thank you, Your Honors. May it please the Court. I am Jonathan Palmer here today on behalf of appellates Shannon Martin and Classic City Clydesdales. Your Honor, this case is really about one thing, and that's whether or not appellates deserve to be heard by a jury regarding whether or not the delay in providing notice to Grange Insurance of the underlying incident was reasonable. Does that mean that you're going to focus on Ms. Martin's claim, so to speak, and less so on Capital Cities? Because Capital Cities is really not about late notice at all, right? It's about whether or not they're a covered insured. I think it's both. I think that even if Classic City Clydesdales is a covered insured, it still would be obligated to provide notice timely or at least to have some justification for a fellow to do so. Okay. But on the converse, just to follow up on that thread, if the Martins provided sufficiently prompt notice, that does not resolve the coverage issue as to Clydesdales? That's correct, Your Honor. Right. Those are two independent on that score. That's correct. Okay. Got it. That's correct. And I'll focus on both of those things. But before we get to whether or not the delay in notice was reasonable, I think we first have to look at what a trial court can consider when determining whether or not an insurer complied with the notice provision. As Your Honors are very aware, I'm sure, it is axiomatic in Georgia and in virtually every other state that when deciding whether an insurer has a duty to defend as opposed to a duty to indemnify, the insurer and therefore the trial court may consider only the complaint, the underlying complaint, and the policy. And if a comparison of those two documents suggests that coverage may potentially be available … But isn't that with respect to whether there's coverage for the underlying incident? It is, Your Honor. Do you have any case that says we observe that rule with respect to notice? No, Your Honor. There's no case that says either way. There's no case that makes a distinction between coverage because of a policy term or coverage because of whether or not the notice was reasonable. But wouldn't it be such a bizarre world to live in to think that we would be bound to the complaint and the underlying action and the pleadings if the issue, as Judge Pryor points out, is not one of coverage but one of notice? When would that information ever be in the underlying pleading or the action? That's a great question, Your Honor. And, in fact, that's, of course, Appelli's argument, right? But the problem with that is that in this case illustrates why extrinsic evidence shouldn't be considered when evaluating the timing of notice. There are so many facts and so many pieces of evidence relevant to that that also go to the underlying matter. And so by evaluating extrinsic evidence in the notice context, you're requiring the insured to try the underlying case in the coverage case. You're requiring the insurer to take positions that may be adverse to its interest. You're requiring the insurer to take positions that may be adverse to the positions that it wants to take in the underlying case, or at least that aren't consistent necessarily with those positions. And so you are jeopardizing the very defense that the insurer is providing under reservation of rights. But the underlying complaint, okay, in a normal liability scenario, the insured gets sued by a third party for something, right? Correct. That underlying complaint is the one whose four corners you look at, generally speaking under state law, and I think Georgia law here, to decide duty to defend, right?  But that complaint, because it is filed by the third party plaintiff against the insured, is never going to have any information about whether or not the insured provided timely notice to its insurance company. So if you're prohibited from looking at extrinsic evidence on the notice issue, that means that in almost every single case, no matter how untimely notice is, even if the notice was – Because the third party tort complaint is not going to have any allegation about notice. The third party plaintiff may or may not know or may or may not care at that point. That's absolutely right, Your Honor. So how do we solve that conundrum? So I think the way you solve it – we're not talking about whether or not coverage is available under the policy, whether or not the insurer has a duty to indemnify. Certainly the extrinsic evidence comes in for that proposition, for that issue. I would submit that where late notice is the insurer's only defense to its duty to defend, the insurer should defend the case. And then after the underlying case is resolved, then the insurer can try the issue of whether or not it has the duty to indemnify because of the late notice. The duty to defend is so much broader than the duty to indemnify. An insurer should not be able to escape that duty by relying on a late notice defense when doing so requires the underlying – the insured to jeopardize and to put into peril its own defense. And that's exactly what's happening in this case. So I know it's just a district court case that doesn't bind us, but you both talk a lot about it, this Minimal case. Correct, Your Honor. But Minimal is a duty to defend case, right? It is. But it deals with this notice issue. It does, Your Honor. What I think you were just answering to Judge Jordan is that with respect to notice, that's only a duty to indemnify issue. It never comes in a duty to defend. So you just think Minimal is wrong? Well, I think no one argued this at this point in Minimal, and that's the issue. There's no evidence in that case to suggest that anybody raised this issue, that anybody contested whether or not extrinsic evidence could come in on the duty to defend issue. Certainly it is true that the court considered that evidence. We don't dispute that. But there's no – there's nothing in that opinion to suggest that anyone suggested that the court could not. And if you look at the other cases, and granted they're not – they're not duty to defend cases, but there are a number of other cases. There's no case that says that this rule cannot apply in the notice context. Minimal doesn't go that far. Minimal does consider extrinsic evidence. But, again, there's no – there's nothing in that case to suggest that that was ever an issue. All right. Let's talk about notice on the merits. Absolutely. Okay. So why was notice appropriate here, or why do you at least get to a jury on the issue of notice? Right. Well, thank you, Your Honor. This policy has two provisions, right? Two clauses. It says, if a claim is made or a suit is brought against any insured, you must notify us as soon as practicable. So that's after suit is brought.  Or claim is made. And then the other one is, and I think this is the one that is probably more pertinent here, but you can correct me if I'm wrong. You must see to it that we are notified as soon as practicable of an occurrence or an offense which may result in a claim. Right? That's right, Your Honor. Okay. And that's the one that we're here today to talk about. And I think that there are a number of reasons why a delay in providing notice could be viewed through the eyes of a jury as being reasonable. And let's just talk about those. First of all, there is no evidence that Ms. Martin was aware of the extent of Ms. Harris's injuries. It was dark when the incident happened. Ms. Martin wasn't around when the Gator Witch incident happened. So there's no evidence. Didn't she take her to the hospital? She did. She did. Did she not know the injury? She took her to the hospital. She didn't take her to the hospital. She took her to an urgent care. I'm not suggesting that. I mean, so I don't know. She may well have eventually discovered the extent of the injury. I'm not suggesting that she didn't. I am saying that there is nothing in the record. that said that she was aware of the severity of the injury, but that fact doesn't cite to anything in the record. It just says she was aware of the severity of the incident. There's nothing in the record to suggest that that is true. There's no evidence. But you don't dispute that she knew that this young girl had gotten her fingers caught in a winch. I do not. And, as Judge Jordan points out, that she understood the injury was serious enough to know that this woman needed urgent medical care. It may well be the case that Ms. Harris insisted on urgent medical care. We don't know because that's not in the record. And even to the extent that she did understand eventually the severity of the incident. She wasn't deposed? In the underlying case? No, in this case. I believe she was, but there's – Nobody asked her that question? Apparently not. Apparently not, Your Honor. And so that's – obviously it's their burden because it's their declaratory judgment action. And so one would think that if she was aware of the severity of the injury, there would be evidence of that. And there isn't. There is a statement of fact that says that, but again, nothing – there's nothing in the record. There's no citation or anything in the record to confirm that. But even if she knew about the severity of the incident, there's nothing to suggest that it would be unreasonable for her to decide to transport Ms. Harris to the urgent care facility as opposed to waiting around for an ambulance. Nobody denies that. I mean that's the right thing to do. The question is why delay the notice or why was the notice delayed in these circumstances? And what's the answer on the Martin side? Because if no one disputes that it was reasonable for her to transport Ms. Harris to the urgent care facility, then one would have to assume that it is reasonable for her to expect not to be sued for doing so. Based on what? Well, Your Honor, you said that no one disputes that it was reasonable for her to put Ms. Harris in her car and transport her to the urgent care facility. But the question at that point, since we're doing everything sort of through the lens of hindsight, it's not whether or not she would have been sued for taking her to the urgent care. It's whether or not she would have been sued for the injury, which occurred when she caught her hand in the winch. So, Your Honor, that's one or the other or both? So, Your Honor, that's a great question. And in fact, the district court said that there are two occurrences and appellees don't dispute that. The first occurrence is getting her hand caught in the winch, right? And there may be some reason to assume that classic city Clydesdales would have been sued for negligence for that. The other incident, as it pertains to Ms. Martin, I mean, Ms. Martin isn't the winch incident. It was her decision to transport Ms. Harris to the urgent care facility as opposed to waiting around for the ambulance. And all of the facts and circumstances attendant to that. So, even to the extent that classic city Clydesdales had a duty to notify the insurer of the winch incident and failed to timely provide that notice, that doesn't mean that Ms. Harris had a duty to notify the insurer of the winch incident. She only would have had a duty to notify Grange Insurance Company if she believed she was going to get sued for transporting her to the urgent care facility. The district court agreed with us on that, and appellees don't contest that, that there are two separate occurrences. And we're really looking, at least as it concerns Ms. Martin, we're really looking at the decision to drive her to the hospital. And because, as Your Honor said, it's not unreasonable for her to put Ms. Harris in her truck and get her to the hospital as opposed to waiting around for an ambulance, Ms. Martin could reasonably assume that she wasn't going to get sued for doing that. She wasn't going to get sued for being a good Samaritan. Now, I have a follow-up to that if you'd like, but I'm out of time, I see. So, I'm happy to – I'm taking you over your time. You can eat into your rebuttal if you want, or you can save your time for rebuttal. I will save my time for rebuttal, Your Honor. Thank you. Thank you very much.  Mr. Bedinger. May it please the Court, my name is Frank Bedinger with Hawkins, Parnell & Young. And I'm about to begin my 48th year of practice in this State. And I would like to take an opportunity to thank my brother at the bar for his professional courtesy in this case. As the trial court noted in its order, my team gaped on the statement of facts required by the local rules. My young associate became very familiar with the local rules after that. But I apologize to the trial court for that, and I compliment Mr. Palmer for his professional courtesy, particularly in an era where I have observed over my career a decline in professional courtesy and civility. And so, I would like to thank him publicly. I have already, and he told me truthfully, neither of us were trained to win other than on the merits. This is a case, as the trial court ruled in his order, is plainly unambiguous. There is nothing here for this court to worry about. Obviously, since both— Can I ask you a background question about—this is my term, not anybody else's— this mishmash of Georgia law on what constitutes sufficient, reasonable notice. The cases seem to be difficult to harmonize, as one Georgia court of appeals decision has said. There seems to be no bright-line rule that a year is too long or three months is okay. It's all fact-dependent, context-dependent, and it's really hard to draw a black-letter principle from the Georgia cases. But maybe I've missed something, and you can help me with— Well, no, I'm not going to help you with what the bright-line law is. I'm going to alleviate your need to even consider that. Twenty-two and a half months is late under any case decision in Georgia law, and so I'm not sure how a mishmash on notice is going to help the Martins here. Now, the question was asked to my opposing counsel, didn't Ms. Martin know she took her to a hospital? Well, Ms. Martin has stated in her admissions that she was going to take the young girl to an urgent care center. I don't think there's any real distinction between the two, given the severity of the injuries, and Mr. Palmer's offhand remark of waiting around for the ambulance is proven to be wrong by the mere fact that as Ms. Martin was driving, the ambulance appeared, and she called her husband, turn out the lights. They can't find you. They won't charge us. Now, can I ask you a question? Yes, sir. That allegation comes from where? What allegation? I'm sorry. She called her husband to tell him to turn off the lights. Where does that come from?  The complaint in the underlying suit. Yes, sir. So is that, this is one concern I have about this case, is that I feel like the district court might have taken the facts in the light most favorable to you by reviewing the facts as alleged in the underlying complaint instead of the facts in this case that are disputed between the parties. So, I mean, is it your position that the district court, A, didn't err in taking the facts in the light most favorable to you instead of him, or that even if the district court erred, never mind, don't worry, because even if you take the facts in the light most favorable to him, I still win? No, I disagree. Well, I guess I was asking, which is your position? The district court didn't make a mistake, or it might have made a mistake, but it doesn't matter? Well, I'm going to say both, because it didn't make a mistake, and I think the district court was entitled to rely on the complaint. That's all we had, and the complaint by Ms. Harris states, I don't have the paragraph for you, but I promise you it's in there, that as we drove, I overheard Ms. Martin call her husband and say, turn out the lights, they can't find us, they won't charge us. And that's a red herring anyway, because Ms. Harris had stated to Ms. Martin, in the beginning, don't worry about the cost, my mother will pay for it. Mrs. Martin gambled. My wife doesn't like it when I play the lottery, but when it gets high like it is right now, she'll say, go buy a couple of tickets. It's transformational if we win. Here, Mrs. Martin and her husband gambled by not providing notice, and unfortunately, unlike the lottery, their gamble is going to be life-changing for them. But on the notice issue, same sort of question I asked Mr. Palmer. To what extent are you considering the underlying tort complaint as true when you're dealing with notice issues if you're going to admit extrinsic evidence? It isn't my job to consider the underlying complaint, Your Honor. I, nor my insurance carrier, was present when this incident occurred, nor did we find out about it for 22 and a half months. I appreciate that, but that's not my question. I apologize. In a normal duty-to-defend scenario, right, a district court sitting in diversity, applying Georgia law, is only going to look at the four corners of the complaint and the language of the insurance policy to see if there's a duty to defend, not a duty to indemnify, right? I believe that's correct.  So what happens in a case where, a crazy case, where the plaintiff alleges that notice was not given to the insurance company until three years later, but the insured has proof that they provided notice a month later? What happens? I would believe that that would be decided adverse to the insurance carrier. Proof of notice is what is fundamentally absent here until September 6, 2023, darn near two years after the injury. Right. Nobody doubts that specific fact as the case is coming to us. But I think what Judge Newsom's question was getting at, and if not, he can correct me, is that the reasons for the late notice and all of the things that surround the delay in notice may be contested. And what is a district court to do in figuring out that conflux of facts about why notice was given 22 1⁄2 months later? Do you take the allegations in the third-party plaintiff's complaint as true? Do you take evidence from the parties, including the insurance company, in a deck action? What do you do? Well, there is no evidence from the insurance company here, Your Honor, other than a complaint for summary judgment based on failure to notify. Well, you had to present some evidence that you didn't get notice until 22 1⁄2 months later, right? The complaint itself contains the date of injury and the date of filing, and the Martins supplied us with evidence on or about September 6, 2023, again. I know, but when you get to summary judgment, allegations in a complaint are insufficient. So you say they admitted when they answered the complaint, they admitted that they gave you notice? They answered, not to interrupt. No, the complaint came a few weeks after they provided notice, barely in time to avoid the statute of limitations. So when the district court makes a finding or a statement that you received notice 22 1⁄2 months after the incident, where does that evidence come from? Not the allegation. Where does that evidence come from? Who put that into the record? I suppose that my client did. Right, somehow, some way. I doubt the Martins did. Somehow, we were given notice on September 6, on or about, of almost two years later. The district court has an applied common sense here, too, Your Honor. This woman, this young girl, was taken to the hospital and spent hours waiting to be assessed. And when they assessed her, they took her to surgery. Do you think an ambulance, if it had been allowed to come on and take charge of the incident, would have resulted in such a delay? This was willful ignorance by Mrs. Martin. She did not look. She did not want to know. She assumed the attitude of an ostrich, and she buried her head in the sand. If I don't see it, it didn't happen. Well, it did happen. And she did not exercise her duty to put Grange on notice, nor did her husband. Johnson Insurance Services was the insurance broker. Is that right? Correct. Well, I have not confirmed that. That's what the face of the policy states, and I accept that. Okay. I haven't deposed. I'm unaware that Ms. Harris has been deposed, to be perfectly honest. Mr. Palmer says she was. We were not involved in the underlying case. We filed our complaint for declaratory judgment fairly promptly, as the record reflects, albeit without a statement of facts in violation of the local rules. Under Georgia law, there are some states that require the insurance company to show prejudice from late notice. Is that the rule in Georgia, or is the rule in Georgia different? There is no rule that the insurance company has to show prejudice in Georgia that I'm familiar with. Maybe I've missed it. No, no. I'm just asking the question. That is the rule in some other states. It's not in Georgia, Your Honor.  And I also want to point out that I don't know Judge Self, but I'm going to bet a quarter that he's an English major because his order reflecting structure, grammar, and the impact of same on the policy was mind-blowing to me. And, spoiler alert, I'm an English major. It was very impressive, and he may have relied on a very clever law clerk. I don't know. But I compliment the trial court for this order because I don't believe you're going to find any problem with it, although Mr. Palmer and I both conceded that it's a little unusual when neither side asks for oral argument, and yet the court grants it anyway. So we're here to answer whatever questions that this panel has. I think we're done on our side. Before I leave, every time I come here, I'm cognizant of the fact that it may be my last time, and I appreciate the opportunity. It is an honor and a privilege, and thank you for your attention. All right, thank you very much. First, let me express gratitude for my colleague's kind words about the way that my associate and I approached the failure to include the statement of facts. That was awfully kind of him to say that. And I agree, we're not here today to win our technicality. I don't think that's ñ neither one of us wants that. We want to deal with this on the merits, and I hope we have done that. That presentation, Your Honor, is exactly why, and I don't want to belabor this point because I still need to get into why Ms. Martin was reasonable in the delay in providing notice and the required timing of notice and those sorts of issues. But I do want to highlight that that presentation demonstrates exactly why we ought not be considering the extrinsic evidence. Ms. Martin was just on trial in that presentation. Ms. Martin's decisions surrounding the incident were on trial in that presentation. One can't imagine that it will not take an enterprising plaintiff's attorney to take the transcript of this oral argument and put it up on a projector in front of the jury in the underlying case. That's exactly why we don't look at extrinsic evidence when it comes to the duty to defend because what you just heard severely compromises the Martins' defense. It severely compromises Classic City Clydesdale's defense. That's why this bright line rule exists. So, and there's no reason not to apply it. What do the, if you know, what do the major insurance treatises say about the point that you're addressing now about whether or not you can or should consider extrinsic evidence on a notice issue in a DEC action? I don't know that there are any treatises, and I certainly don't think that there are any Georgia cases, that make a distinction between a late notice case and a case that involves a denial of coverage on some other basis. And as this case shows, there ought not be that distinction, at least not in this case. So, but again, I don't want to belabor that point. Mr. Bedinger said that there was no, that there is a bright line rule and that 22 months is just, is an unreasonable delay. The lower court found that that is the case as a matter of law. With respect to Mr. Bedinger, that is not true. In fact, there's a case, Vintage Hospitality Group, 565 F Sub 3rd, and it's in our brief. But it specifically says that there is no, quote, bright line rule for how much delay is too much delay. And in that case, the insured waited 19 months to provide notice. What's the, you gave us the volume, but you didn't give us the page, 565 F Sub 3rd? And it's the 1367, I believe, is the pin site, but I can tell you in just a second. Okay.  It's, yes, it's 1369. And, you know, quoting, it says, the fact that the insured gave notice 19 months after the event and now maintains gives rise to its claim is certainly not dispositive. So there is no bright line rule. There are a number of different circumstances and considerations that are relevant to whether or not a delay in providing notice was reasonable. Certainly, I don't disagree that the timing of notice is one of them. If it wasn't, we wouldn't be here. And I don't dispute that Ms. Martin and Classic City Clydesdales waited 22 months to provide notice. But that's not where the story ends. The trial court also needs to consider various other circumstances and concerns and considerations. For example, what did Ms. Martin know? When did she know it? You know, how severe was the injury? Did Ms. Martin believe that notice was provided? And there are various other ones. I wanted to kind of tick through those pretty quickly as my time is dwindling. But the, so, and with respect to Your Honor's questions about the facts of the allegations in the underlying complaint, to the extent we have to consider those, and, again, I don't think that we should, if you look at those allegations, they're plainly inconsistent. The, Ms. Harris alleges that Ms. Martin told her employee to call and cancel the ambulance. The ambulance showed up. So either the employee didn't call or his directions were disregarded. Either way, calling and telling the ambulance not to show up is not a basis for a claim here. Ms. Harris alleges that Ms. Martin called and told her husband to turn off the lights so the ambulance couldn't find Ms. Harris. Well, Ms. Harris alleges that she was already in the truck with Ms. Martin heading to the urgent care when the ambulance showed up. So the ambulance, if they were already on the road to the urgent care and they saw the ambulance show up to the premises at the same time, it would make no sense for Ms. Martin to call and tell her husband to turn off the lights so that the ambulance could not find some location where they just were. But if you believe that extrinsic evidence cannot be considered, should not be considered, what else do you have except the underlying complaint to consider? Your Honor, I think that if you – if we're not going to look at extrinsic evidence… No, no. I'm asking. You say no extrinsic evidence, right? Correct. So the only thing left is the underlying complaint. Correct. Okay. So let me give you this hypothetical. The underlying complaint contains a falsity about a defendant's knowledge of injury. It says in this – let's use Ms. Martin and Ms. Harris here – that Ms. Martin was there when the injury occurred, saw the severity of the injury, and decided for good reason or bad to take Ms. Harris to the urgent care. Right? Correct. That's what the underlying complaint alleges. Correct. She's the only insured in my hypothetical. Okay? Okay. It turns out that Ms. Martin was not there, did not know about the injury, was not told about the injury until a year and a half later because she was an expatriate owner and she lived elsewhere. You can't contest a complaint in a deck action on lack of notice? It's a great question, Your Honor, and so if we're not looking at extrinsic evidence, we never even get to that issue. No, and you lose. You lose. We don't because – You do because you're considering the underlying complaint, taking it as true, and if you take the underlying complaint as true, Ms. Harris was there, she saw the injury, she saw the severity of the injury, and she didn't provide notice until three years later. Done. End of story. But there is nothing in the underlying complaint about when Ms. Martin provided notice. There is nothing in the underlying complaint about circumstances regarding when she provided notice. So you don't get to whether or not – you don't get to the veracity of the allegations in the underlying complaint because a critical element of the insurer's defense is missing. That is that notice was late in the first place. So you can't even consider the date of the notice in a deck action? We wouldn't know the date of the notice. If we're only looking at the underlying complaint and the policy, we wouldn't know the date of the notice. If you're going to get into extrinsic evidence, though, the insured has to be able to rebut it, right? So the insurer can't have it both ways. The insurer can't say, well, we only want to look at the extrinsic evidence we want to look at. We don't want to look at the veracity of the allegations in the complaint. If the underlying complaint comes in, if that's something that we're looking at and we're going to look at the allegations in the underlying complaint and we're going to look at evidence surrounding those allegations, then certainly the policyholder gets to rebut that because otherwise the insurer could just come in and say, well, whatever she realizes is true. I agree with that. The question is whether or not the universe of evidence is closed or not. All right, thank you both very much. We really appreciate it. Thank you, Your Honors. Thank you. All right.